[Cite as *State v. Crumpler*, 2014-Ohio-3211.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26763 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KHALILAH E. CRUMPLER, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. CV2010-12-8145 |

DECISION AND JOURNAL ENTRY

Dated: July 23, 2014

BELFANCE, Presiding Judge.

{¶1} The State appeals the judgment of the Summit County Court of Common Pleas denying its request for the forfeiture of money and jewelry. For the reasons set forth below, we reverse.

I.

{¶2} Khalilah Crumpler was driving a Hummer in October 2010 when she was stopped by Twinsburg police officers. Ms. Crumpler was arrested based upon an outstanding warrant. The subsequent search of her vehicle uncovered nearly $700,000 in cash that was wrapped in dryer sheets and plastic wrap and bundled with rubber bands. A drug dog alerted on the money discovered in the vehicle.

{¶3} The day following the stop, the police obtained a warrant to search Ms. Crumpler's residence. The police discovered jewelry, some of which still had price tags, and over $10,000 in cash. Some of the cash was found in a purse and some in a dresser drawer. Ms.

Crumpler was not prosecuted with respect to the discovery of the cash or the other items. However, a civil forfeiture petition was filed in the Summit County Court of Pleas seeking the forfeiture of the items and money discovered in Ms. Crumpler's home. Ms. Crumpler filed a motion to suppress and dismiss, which the trial court granted in part. The State appealed, and we reversed the trial court's decision except for its determinations of probable cause and Ms. Crumpler's lack of standing to challenge the forfeiture of jewelry with the price tags still on them. *State v. Crumpler*, 9th Dist. Summit Nos. 26098, 26118, 2012-Ohio-2601.

{¶4} Following our remand, the trial court held a forfeiture hearing. The trial court denied the State's forfeiture petition with regard to the money and to the jewelry without price tags but granted it for the jewelry with price tags. The State has again appealed, raising a single assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING THE STATE'S FORFEITURE PETITION PURSUANT TO R.C. 2981.

{¶5} The State argues that it presented sufficient evidence at the forfeiture hearing to demonstrate that the money and jewelry were proceeds or instrumentalities subject to forfeiture pursuant to R.C. 2981.05. Therefore, according to the State, the trial court erred when it denied its forfeiture petition.

{¶6} We initially note that the State is essentially presuming that, if there was sufficient evidence, the trial court must find that the property at issue is forfeited. However, "[i]n civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. Sufficiency is "'"a term of art meaning that legal standard

which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" * * * In essence, sufficiency is a test of adequacy." *Id*. at ¶ 11, quoting *State v. Thompkins¸* 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). By contrast, "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."'" (Emphasis omitted.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's* at 1594. Thus, a decision may be supported by sufficient evidence but still be against the manifest weight of the evidence. *Eastley* at ¶ 12.

{¶7} Thus, because the State had the burden of proof in this forfeiture proceeding, it bore both the burden of production *and* the burden of persuasion. Even if the State produced evidence that, if believed, would satisfy the requirements of a forfeiture proceeding, that would not necessarily entitle it to the forfeiture. *See id*. Unlike the review of sufficiency, which is de novo, *see id.*, an appellate court reviewing the manifest weight of the evidence "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Id*. at ¶ 20. In conducting this review, a "court of appeals must always be mindful of the presumption in favor of the finder of fact * * * and every reasonable presumption must be made in favor of the judgment and the finding of facts." (Internal quotations and citations omitted.) *Id*. at ¶ 21.

{¶8} The State argues that the trial court erred when it determined that the State had failed to present sufficient evidence. In its judgment entry, the trial court wrote that it found Ms.

Crumpler to be a "less than credible witness" and that her statements to police were evidence of a consciousness of guilt. The trial court then wrote,

> The evidence before the Court establishes no more than suspicion that the items are connected with the exchange of narcotics, money laundering, or theft. The State did not meet its burden to prove by a preponderance of the evidence that [the money] and the jewelry that does not have price tags still attached, are subject to forfeiture as instrumentalities or proceeds of an offense.

Given the above, it is unclear whether the trial court reached its decision based upon sufficiency of the evidence or its weight. For example, if the trial court did not find Ms. Crumpler credible as to *any* of her testimony, it appears that it decided the case solely based on the evidence presented by the State but found that evidence to be insufficient. On the other hand, while the court may have found the State presented sufficient evidence, other evidence at trial could have undermined the State's evidence. For example, although Detective Krieger testified that short-term traffic at Ms. Crumpler's home was indicative of drug trafficking, no drugs were found besides a misdemeanor amount of marijuana, which does not support a conclusion that Ms. Crumpler was trafficking drugs. Similarly, Ms. Crumpler's testimony that she was out of work and had debt partly due to her failed clothing business, if believed by the court, could explain why she was keeping her money in cash rather than in a bank, e.g. to protect it from creditors. Finally, while the trial court found Ms. Crumpler was less than credible, the trial court was "entitled to believe all, part, or none of the testimony of each witness[,]" and could, therefore, still have believed parts of her testimony, such as the fact that the jewelry items were gifts. (Internal quotations and citations omitted.) *State v. Williams*, 9th Dist. Lorain No. 12CA010298, 2014-Ohio-971, ¶ 17.

{¶9} Because it is unclear whether the trial court determined that there was insufficient evidence or whether it determined, upon weighing all of the evidence, that the State had not

carried its burden of persuasion, we conclude that the State's sufficiency argument is not ripe for review at this time and that the matter must be remanded for the trial court to clarify its entry. We emphasize that we express no opinion about the trial court's ultimate conclusion in this case.

{¶10} The State's assignment of error is sustained in part.

III.

{¶11} In light of the foregoing, we reverse the judgment of the Summit County Court of Common Pleas and remand the matter for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶12} I write separately as I would conclude both that the State presented sufficient evidence to demonstrate that the cash was proceeds from drug trafficking, and that the trial court's decision to the contrary was against the weight of the evidence.

{¶13} R.C. 2981.05(D) authorizes civil forfeiture if the State proves by a preponderance of the evidence that the property is contraband, proceeds of an offense, or an instrumentality used or intended to be used in a felony offense. R.C. 2981.02; *State v. Jelenic*, 9th Dist. Medina No. 10CA0024-M, 2010-Ohio-6056, ¶ 8. The State may file a forfeiture petition pursuant to R.C. 2981.05 irrespective of whether the defendant was charged with, or convicted of, a criminal offense. R.C. 2981.03(F).

{¶14} In this case, the trial court ultimately concluded that the State failed to prove by a preponderance of the evidence that the items in question were either proceeds or instrumentalities of an offense. An "offense" is "any act or omission that could be charged as a criminal offense" regardless of whether criminal prosecution has begun at the time the forfeiture is started. R.C. 2981.01(B)(10). After a review of the trial court's findings, and the testimony presented at the hearing, I disagree with the trial court's conclusion.

{¶15} Crumpler was an unemployed college student at the time she was stopped for driving a Hummer, filled with almost $700,000 in cash. Crumpler was coming from a meeting with a man in a Taco Bell parking lot, a meeting that was aborted when she observed police in the area. The money in the Hummer was packaged in bundles, and wrapped in plastic wrap and

dryer sheets. The money in these bundles had a distinctive dent from the rubber bands that held them together. However, the traffic stop only tells part of the story.

{¶16} For some time before Crumpler was stopped, police had been observing her residence. The Hummer she was driving was often seen parked at her home on Granby Circle where police observed frequent, short-term traffic into and out of the house. Some of the frequent visitors to the house included men who had recently been convicted for money laundering and drug offenses.

{¶17} During the search of the house, a K-9 officer alerted to marijuana in a bedroom dresser where the officers also found $6,000 in cash, and various pieces of jewelry, some with the price tags still attached. The cash consisted of a stack of fifty-dollar bills that had a noticeable crease down the middle, just like the money seized from the Hummer. The kitchen revealed other significant items. A purse found in the kitchen held over $4,000 in cash. This cash was rubber-banded together and in the same denominations as the cash found in the Hummer. In addition, police found rubber bands and a large amount of plastic wrap.

{¶18} Crumpler testified at the forfeiture hearing. Despite its ultimate conclusion, the trial court determined that she was a "less than a credible witness." There is no dispute that she was unemployed, had not filed tax returns for several years, and could produce no records of her income. The trial court did not believe her assertion that the money was left over from her former business or the sale of a car, and I would endorse that conclusion.

{¶19} I cannot, however, agree with the trial court's ultimate conclusion that there was no connection between the items found in the home and criminal activity. In regard to Crumpler's residence itself, she paid a significant amount to stay at the house, but had no

apparent source of income. Residents reported, and police observed, frequent short-term traffic to the house, indicative of drug trafficking.

{¶20} With respect to the evidence found inside the house, there were rubber bands in the house and Crumpler herself testified in federal court that she had bound cash with rubber bands in her house. A large amount of plastic wrap was also found in the house. Plastic wrap, and dryer sheets, are both often used in an effort to conceal evidence from drug-sniffing dogs. The cash in the Hummer, which was bundled together, was wrapped in plastic wrap. As for the cash, about half of it was creased, just like the money found in the Hummer, and the other half was still bound together with a rubber band. The cash was also in the same denominations as the money seized from the Hummer.

{¶21} In light of this evidence, I disagree with the trial court's conclusion that there was no direct evidence to link the cash and jewelry without price tags to an offense. The record contains significant testimony about the drug trafficking activities taking place at Crumpler's home, from the frequent, short-term visits, to the evidence related to bundling and transporting cash from the trafficking activities. Second, circumstantial evidence and direct evidence possess the same probative value, *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, so even if the State's entire case rested on circumstantial evidence, it could still carry its burden to prove that the money is subject to forfeiture. Thus, the State demonstrated that it was "more likely than not" that the cash was connected to a criminal offense. *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 23 (9th Dist.).

{¶22} I would sustain the State's assignment of error on the basis that the trial court erred in concluding that the $6,000 in cash found in the dresser and the $4250 found in the purse were not connected with drug trafficking. As there was no evidence connecting the jewelry not

bearing price tags to drug trafficking or any other type of criminal activity, I agree with trial court's conclusion that the State's forfeiture petition should be denied with respect to those specific items.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

JAMES R. WILLIS and MYRON P. WATSON, Attorneys at Law, for Appellee.